IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEREMY PINSON,

      Plaintiff,

v.                                  No. 1:21-cv-0185 KWR/DLM

FEDERAL BUREAU OF PRISONS,
FNU LNU LIEUTENANT, in his individual capacity,
FELIPE MARTINEZ, JR., Warden, FCC Victorville,
in his individual and official capacities,
GENE BEASELY, Regional Director, Federal Bureau of Prisons,
in his individual and official capacities,
FNU GUTIERREZ, FNU HAGGE,

      Defendants.

**ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on the Proposed Findings and Recommended

Disposition (PFRD) by United States Magistrate Judge Damian L. Martinez, filed June 5, 2023

(Doc. 24), and on Plaintiff's Objections to Report and Recommendation (Objections), filed June

21, 2023 (Doc. 25). The Court, having considered the parties' submissions, the record, and the

relevant law, and for the reasons described below, will overrule Plaintiff's Objections and adopt

the PFRD.

**I.      Background**

This case arises out of Plaintiff Jeremy Pinson's[1] (Pinson's) incarceration in Federal

Bureau of Prisons (BOP) facilities. Pinson, who is *pro se*, asserts claims against the BOP and

various BOP employees for violations of her First and Eighth Amendment Rights during her

incarceration. (*See* Doc. 14-1.) Specifically, she contends that BOP employees unlawfully

---

[1] Jeremy Pinson, in recent filings with the Court, refers to herself using she/her pronouns, as did the Magistrate Judge
in his PFRD. (*See, e.g.*, Docs. 14-1 at 2, 1; 24 at 1 n.1; 25.) The undersigned will do the same.

retaliated against her for filing a separate 2020 conditions-of-confinement lawsuit. (*See id*. at 12.) According to Pinson, BOP employees subjected her to "diesel therapy," the unnecessary transfer of an inmate between facilities in an effort to intimidate and/or silence them. (*See id*.; *see also* Doc. 22 at 1, 3–4.)

On May 16, 2023, the Court granted Pinson's Motion for Leave to File Amended/Supplemental Complaint, ordering service on the defendants named therein.[2] (Doc. 20.) To date, however, no defendant has entered an appearance. (*See* CM/ECF Docket.) Pinson's Motion for TRO and Appointment of Counsel followed on May 30, 2023. (Doc. 22.) United States Magistrate Judge Damian L. Martinez addressed this motion in his June 5, 2023 PFRD, recommending that the Court deny the relief Pinson sought. (Doc. 24.) On June 21, 2023, Pinson filed her Objections, insisting that she was entitled to both a temporary restraining order (TRO) and appointment of counsel. (Doc. 25.)

As the Magistrate Judge outlined in his PFRD, Pinson seeks a TRO precluding the BOP from subjecting her to "diesel therapy" during the pendency of this lawsuit "except under those conditions authorized by the Court consistent with her medical and safety needs during all transports." (Doc. 22 at 9.) Additionally, Pinson seeks the appointment of counsel to represent her in this matter because (1) the case involves disputed facts; (2) she is unable to correspond with other prisoners who may serve as witnesses; (3) the case involves "sensitive evidence relating to the BOP's internal security and procedures"; and (4) she has limited access to legal materials. (*Id.* at 8–9.) The Magistrate Judge recommended denying Pinson's request for TRO because Pinson failed to comply with the requirements of Federal Rule of Civil Procedure 65(b) and because she did not demonstrate an immediate, irreparable injury. (Doc. 24 at 2.) Moreover, the Magistrate

---

[2] The Court's May 16, 2023 Order of Service follows the Court's previous order in which it ordered service on the defendants named in Pinson's initial complaint. (*See* Doc. 11.)

Judge found that Pinson had not met her burden to show circumstances so exceptional as to justify the appointment of counsel. (*Id.* at 6 (citing *Sweat v. Rickards*, 712 F. App'x 769, 778 (10th Cir. 2017)).)

## II.   Legal Standard

When a party files timely written objections to a magistrate judge's recommendation on a dispositive matter, the district judge must conduct a *de novo* review and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). *De novo* review requires the district judge to consider relevant evidence in the record and not merely to review the magistrate judge's recommendation. *In re Griego*, 64 F.3d 580, 584 (10th Cir. 1995). "[A] party's objections to the magistrate judge's [PFRD] must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop., with Buildings, Appurtenances, Improvements, & Contents*, 73 F.3d 1057, 1060 (10th Cir. 1996).

## III.   Analysis

### A.  Motion for TRO

The Magistrate Judge recommends denial of Pinson's request for TRO for two fundamental reasons: (1) because her request was not sworn or supported by an affidavit or verified complaint as required by Federal Rule of Civil Procedure 65(b)(1)(A); and (2) because she did not allege facts to demonstrate an immediate, irreparable injury. (Doc. 24 at 2–4.)

Rule 65(b) offers an exception to the general rule that a preliminary injunction may not be issued without notice to the opposing party, imposing two additional requirements before a no-notice TRO can be issued. *See* Fed. R. Civ. P. 65. First, Rule 65(b)(1) requires a party to show by affidavit or verified complaint the immediate, irreparable injury that will occur if the order is not

granted before the opposing parties are notified and have an opportunity to appear. Second, Rule

65(b)(2) requires an application for a TRO to explain, in writing, the efforts made to notify the

opposing party, and the reasons why no further efforts at notification before issuance of the order

are justified. Unlike an ordinary preliminary injunction, a TRO is only effective for 14 days, with

an opportunity for one extension without the consent of the opposing party, for a maximum of 14

additional days. *See* Fed. R. Civ. P. 65(b)(2). As such, courts often use TROs to maintain the *status*

*quo* in advance of a more thorough hearing on a motion for preliminary injunction. *See Tickets for*

*Less, LLC v. Cypress Media, LLC*, No. 20-2047-JAR-GEB, 2020 WL 528449, \*3 (D. Kan. Feb. 3,

20220) ("The function of a TRO is to maintain the status quo for a brief period of time until the

court can consider whether to issue a preliminary injunction.")

Here, Pinson couches her motion as one for TRO, not for a preliminary injunction, though

she maintains in her Objections that she actually provided notice to defendants. (*See* Docs. 22; 25

at 1 (asserting that, although she neglected to include a Certificate of Service with her Motion for

TRO, she "serve[d] BOP a copy of her motion by Certified U.S. Mail (No. 7011 1150 0001 0603

4233)").) As to whether she provided an affidavit or verified complaint, Pinson submits that her

Motion, prepared on a form supplied by the Court Clerk, included a certification on Page 11. (Doc.

25 at 1.) The Court's inspection of Pinson's Motion, however, reveals no such certification;[3] nor

is Pinson's Motion signed under penalty of perjury or accompanied by a sworn factual statement.

(*See* Docs. 22; 25.) Pinson purports to append a "declaration under penalty of perjury" to her

Objections. (Doc. 25 at 1.) Although the Court finds no such "declaration" within or appended to

Pinson's Objections, she did submit a separate document for filing, entitled "Declaration of Jeremy

---

[3] At most, Pinson includes her signature on the motion at page 9. (*See* Doc. 22 at 9.)

Pinson," wherein she reasserts the basic allegations in her Motion for TRO "under penalty of

perjury."[4] (*See* Doc. 27.)

Even if Pinson's late-filed "Declaration," together with her allegation that she "served the

TRO Motion upon BOP via Certified Mail," satisfied the procedural requirements of Rule

65(b)(1)(A), she must also satisfy its substantive requirements.[5] Ultimately, the Court finds that

she has failed to meet the substantive requirements for issuance of a TRO.

The Tenth Circuit has explained:

> In hearings upon motions for temporary or preliminary injunctive relief, the burden
> is upon the one requesting such relief to make a prima facie case showing a
> reasonable probability that [she] will ultimately be entitled to the relief sought. The
> applicant has the additional burden of showing a right to the specific injunctive
> relief sought because of irreparable injury that will result if the injunction is not
> granted. There must exist a probable right and a probable danger.

*Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980). When an applicant seeks a TRO, this test

is expanded into four prerequisites that the moving party must establish:

> (1) a showing that the movant will suffer immediate and irreparable injury unless
> the injunction issues; (2) proof that the threatened injury to the movant outweighs
> whatever damage the proposed injunction may cause the opposing party; (3) a
> substantial likelihood that the movant will eventually prevail on the merits; and
> (4) a showing that the injunction, if issued, would not be adverse to the public
> interest.

*Nevarez-Barela v. United States*, No. CV 19-00633 KG/KBM, 2020 WL 1503637, at *2 (D.N.M.

Mar. 27, 2020) (citing *Lundgrin*, 619 F.2d at 63). "'Because a showing of probable irreparable

---

[4] Specifically, Pinson's Declaration asserts that Defendant Gutierrez "submitted [her] for redesignation" on April 15, 2023; that when she was previously transferred, she was "denied food, water, medications, and a toilet, and sleep for 24-48 hours at a time"; and that she had previously been "transported in a waist chain attached to handcuffs . . . encased in a 'black box' that increases pressure on [her] wrist injury." (*See* Doc. 27.) Pinson also estimates that once redesignated, she would be transferred within a "few weeks." (*Id.*)

[5] The substantive requirements for a no-notice TRO and a preliminary injunction are virtually identical, except that an applicant for a TRO must show that she will suffer *immediate*, irreparable harm unless the injunction issues. *See Nevarez-Barela*, 2020 WL 1503637, at *2 (setting out the substantive requirements for a TRO and a preliminary injunction).

harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements' will be considered." *DTC Energy Grp., Inc. v. Hirschfield*, 912 F.3d 1263, 1270 (10th Cir. 2018) (citation omitted).

In her Motion for TRO, Pinson alleges that in December 2020 and January 2021 she was subject to "diesel therapy" and was "severely restrained" and deprived of food, water, medications, stationary, sleep, access to a phone or the internet, and access to legal materials for the duration of the transit period between facilities. (Doc. 22 at 2.) In an apparent effort to demonstrate that she is also at risk of future transfers with similar deprivations, Pinson alleges that on April 15, 2023, Defendant Gutierrez submitted a request to "subject her to more diesel therapy under said conditions" (Doc. 22 at 2), or as Pinson put it in her Declaration, Defendant Gutierrez "submitted [her] for redesignation" (Doc. 27 at 1). Pinson attaches to her Motion for TRO what appears to be an April 7, 2023 e-mail from herself to "J. Epplin" of the "Transgender Executive Council" in which she states that "Warden Gutierrez has been persisting in *trying* to transfer me." (Doc. 22 at 11 (emphasis added).) In the e-mail Pinson indicated that it was her "understanding that [the Transgender Executive Council] intend[ed] to send [her] to some kind of 'Secure Admin Unit' in Allenwood." (*Id.*) But she explained that, from her perspective, she did not need to be transferred for her own safety. (*Id.*)  Pinson expressed a preference to remain at USP Tucson, where she had been assigned for approximately seven months. (*Id.*)

The Magistrate Judge concluded that Pinson's allegation that Defendant Gutierrez had requested her transfer, coupled with her e-mail to the Transgender Executive Council reporting that "Warden Gutierrez ha[d] been persisting in trying to transfer" her, were insufficient to show more than a *possibility* of immediate risk of harm or an irreparable injury. (Doc. 24 at 4 (citing

*Legacy Church, Inc. v. Kunkel*, 455 F. Supp. 3d 1100, 1132 (D.N.M. 2020)).) Pinson objects to

this finding, but her arguments reveal that she misconstrues the Magistrate Judge's reasoning.

First, she "assumes" that the Magistrate Judge's characterization of her statements and email as

"insufficient" follows from his observation that these statements were unsworn. (Doc. 25 at 2.)

Second, she suggests that the Magistrate Judge "insinuat[es]" that her statement and email were

"not evidence, because [he did] not believe her." (*Id*. at 3.) To the contrary, even if Pinson's

statement and email were sworn, properly presented, and assumed to be true, they would not

suffice to meet her burden to demonstrate entitlement to a TRO. That is, Pinson's allegations,

including those contained in her email, are insufficient to show more than a *possibility* of

immediate risk of harm or an irreparable injury. That Warden Gutierrez allegedly requested

Pinson's transfer seven months after she arrived at USP Tucson falls short of the necessary

showing. In other words, the Court agrees with the Magistrate Judge's assessment that Pinson fails

to demonstrate the *probability* of immediate harm or irreparable injury.

Pinson also objects on the basis that "[t]here is no evidence on the record to support the

assumption she wont [sic] be transferred, or wont [sic] be transferred i[n] the usual manner." (Doc.

25 at 4.)  But Pinson misunderstands her TRO burden. An allegation that there is "no evidence"

that she will *not* be transferred fails to suffice. Rather, she must demonstrate that she *will probably

be* immediately and irreparably harmed from a transfer to a different facility. Pinson has not met

the heavy showing required to secure such an extraordinary remedy. Because Pinson has not made

the threshold factual showing of immediate and irreparable harm, the Court will not reach the

remaining Rule 65(b) elements. Pinson's Motion for TRO will be denied.

**B.  Motion to Appoint Counsel and for Evidentiary Hearing**

The Magistrate Judge also recommended denial of Pinson's request for appointment of counsel, concluding that she failed to meet her burden to show circumstances so exceptional to justify exercise of the Court's discretion to appoint counsel. (Doc. 24 at 6 (citing *Sweat*, 712 F. App'x at 778).) The Magistrate Judge observed that Pinson is "litigious and "well-versed in pursuing claims as a pro se prisoner litigant." (*Id*. at 5 (citing *Pinson v. Fed. Bureau of Prisons*, 843 F. App'x 423 (9th Cir. 2021); *Pinson v. Oliver*, 601 F. App'x 679 (10th Cir. 2015); *Pinson v. Berkebile*, 576 F. App'x 710 (10th Cir. 2014); *Pinson v. Casden*, No. 13-cv-1384 BNB, 2013 WL 3216144 (D. Colo. June 25, 2013); *Pinson v. Pacheco*, 424 F. App'x 749 (10th Cir. 2011)).) The Magistrate Judge also determined, and this Court agrees, that Pinson "demonstrate[s] an understanding of the issues in [this] case and appears to be capably representing [herself]." (*Id*. (quoting *Blake v. Geo Grp., Inc.*, No. CV 17-807 MIS/KK, 2022 WL 4099238, at *1 (D.N.M. Mar. 18, 2022)).).

Conceding that she is "indeed well-versed in the litigation of her civil rights claims," Pinson maintains that she nevertheless faces obstacles in obtaining declarations from other inmates in support of her claims because she has been subject to prison lockdown and physical isolation from other inmates. (Doc. 25 at 2.) She insists that she is "physically barred from necessary evidence to support a TRO" and "prohibit[ed] by BOP on her access to readily available evidence." (*Id*. at 3.) She describes the appointment of counsel together with an evidentiary hearing as a "solution to both the deficit in the TRO record, and [her] right to present her case without interference." (*Id*.)

Pinson fails to offer any insight, however, into what evidence she might produce with assistance of counsel or during an evidentiary hearing that would demonstrate the *probability* of

immediate harm or irreparable injury. (*See* Doc. 25.) The Court will not speculate as to any evidence to which she might be referring. Moreover, as the Magistrate Judge explained in his PFRD, should a *Martinez* report prove insufficient to evaluate Pinson's claims in this case, the Court may consider requests for discovery related to other prisoners. (Doc. 24 at 6.)

In further support of Pinson's request for counsel, she states in her Objections that she has "no access (meaning none, zero, nada) to a law library nor assistance from anyone trained in the law at USP Tucson." (Doc. 25 at 6.)  Yet, Pinson's Objections, like her Motion for TRO, is replete with citations to case law and recitations of court holdings and legal principals. (*See* Docs. 22; 25.) The Court will not exercise its discretion to appoint counsel to represent Pinson at this juncture.

## IV.     Conclusion

For the reasons discussed above, the Court concludes that Pinson fails to demonstrate a right to a TRO or to the appointment of counsel.

**IT IS THEREFORE ORDERED** that the Magistrate Judge's PFRD (Doc. 24) is **ADOPTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for TRO and Appointment of Counsel (Doc. 22) is **DENIED**.

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**