IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEREMY PINSON,[1]

    Plaintiff,

v.                                            No. 1:21-cv-0185 KWR/DLM

FEDERAL BUREAU OF PRISONS, *et al.*,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION RECOMMENDING DISMISSAL OF PLAINTIFF'S CLAIMS AGAINST THE FEDERAL BUREAU OF PRISONS AND THE OFFICIAL CAPACITY DEFENDANTS**

Plaintiff Jeremy Pinson brings claims under the First and Eighth Amendments against the Federal Bureau of Prisons (BOP) and five individual BOP employees pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. 21.) She also seeks an injunction regarding the way the BOP transports her between facilities. (*Id.* at 5.) Before the Court is an Amended Motion to Dismiss, filed on October 22, 2024, by Defendant BOP and Felipe Martinez, Jr., Gene Beasley, M. Gutierrez, and M. Hagge, each in their official capacity (Official Capacity Defendants). (Doc. 59.) Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), they move to dismiss Pinson's claims against them. United States District Judge Kea W. Riggs referred the case to the undersigned to make proposed findings and a recommended disposition. (Doc. 19.) After careful review and consideration of the filings, the Court finds that Pinson's claims against the BOP and the Official Capacity Defendants are either barred by sovereign immunity or Pinson fails to state a claim. Thus, the Court recommends granting the motion and dismissing the claims against the BOP and the Official Capacity Defendants.

---

[1] Jeremy Pinson, also known as Grace, refers to herself using she/her pronouns. (Doc. 21 at 2, 12.) The Court will do the same.

1

I.      **Factual and Procedural Background**

Pinson is a federal prisoner in the custody of the BOP.[2] In Pinson's original complaint filed on March 1, 2021, she asserted claims against the BOP and an unknown lieutenant (FNC LNU Lieutenant) for an alleged violation of her Eighth Amendment rights pursuant to *Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. 1.) In Pinson's amended complaint, she added a claim under the First Amendment. (Doc. 21 at 3.) Pinson also added four defendants: (1) Felipe Martinez, Jr., Warden of Federal Bureau of Prisons; (2) Gene Beasley, Regional Director, Federal Bureau of Prisons; (3) M. Gutierrez, Federal Bureau of Prisons; and (4) M. Hagge, Lieutenant, Federal Bureau of Prisons, USP Victorville. (*Id.* at 3, 5, 12–15.) She seeks monetary damages from Martinez and Beasley and injunctive relief against the BOP regarding the way BOP transports her between facilities. (*Id.* at 5.)

In the "Exhaustion of Administrative Remedies Administrative Procedures" section of her form complaint, she checked the box "no" to the question of whether her claims arose while confined in "jail, prison, or other correctional facility." (*Id.* at 6.) She stated that the jail or correctional facility had a grievance procedure. (*Id.*) She checked the box "yes" when asked whether "the grievance procedure at the jail, prison, or other correctional facility where [her] claims(s) arose cover some or all of [her] claims." (*Id.*) When asked whether she filed a grievance concerning the facts relating to her complaint, she checked the box "no" and stated that she "requested but was never supplied forms." (*Id.* at 7.) The next question asked, "If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other

---

[2] Pinson is a frequent litigant, and she admits that she is ineligible under 28 U.S.C. § 1915 to proceed in forma pauperis. (Doc. 21 at 8.) *See also Manos v. U.S. Dep't of Justice*, No. 1:18-cv-00314-UNA, 2018 WL 11670880, at *1 (D.D.C. June 12, 2018) (stating that "Pinson long ago accumulated three strikes") (citation omitted); *Pinson v. Oliver*, 601 F. App'x 679, 683 (10th Cir. Feb. 12, 2015) (imposing filing restrictions on Pinson due to an abusive filing history with regard to § 2241 motions and stating that "Pinson has a lengthy and abusive filing history . . . [and] has filed more than a hundred civil complaints and § 2241 applications in various federal courts throughout the country.").

2

correctional facility?" She checked the box "yes" but also wrote that she "sent request for forms but never got them." (*Id.*) She also stated that she filed a grievance at USP Coleman II. (*Id.*)

Pinson alleges that while serving a prison sentence, she filed a lawsuit and sought a preliminary injunction "regarding conditions of confinement that failed to protect her from Covid-19." (*Id.* at 12.) After the judge set a hearing in that case, she contends that "a series of events began that served as a nightmarish experience" for her. (*Id.*) Pinson asserts that her claims arise between December 14 and December 16, 2020. (*Id.* at 5.) She alleges that while at USP Victorville, and prior to her departure from the facility on December 14, Martinez, Hagge, and Gutierrez repeatedly stated that they had "a special trip planned for [her], good old fashion[ed] diesel therapy." (*Id.*)

On December 14, 2020, Pinson contends that Gutierrez directed an "inmate intra-system transfer." (*Id.*) The transfer took two days. (*Id.* at 13–14.) Pinson states that she was placed on a bus in restraints that were too tight, and the restraints painfully compressed her injured left wrist and caused severe pain. (*Id.* at 12–13.) She alleges that she complained to an unknown, white male lieutenant and other officers that the restraints were too tight. (*Id.* at 13.) At a stop in New Mexico, Pinson again complained about the restraints. (*Id.*) She also complained of the lack of water, food, and medications, as well as the lack of opportunity to urinate and defecate. (*Id.*) Pinson asked for soft restraints and to be taken to the hospital because her hands were numb, and her fingers were stiff. (*Id.*) The lieutenant denied her request. (*Id.*)

At Pinson's bus transfer in Texas, she complained to a new lieutenant who allegedly stated that "you put them lawsuits in and pissed-em off way higher than my pay grade, deal with it." (*Id.*) During the bus trip, Pinson contends that she was denied a face mask, social distancing, and other personal protective equipment. (*Id.*) She claims that Beasley, Martinez, Hagge, and Gutierrez were

3

aware of her previous lawsuit and the COVID-19 pandemic state of emergency in California when they approved her transport. (*Id.* at 13–14.) As a result of the transfer, Pinson asserts that she endured severe pain, humiliation, discomfort, increased nerve damage, distress, despair, and suicidal ideation. (*Id.* at 14.) Pinson seeks monetary damages against the unknown lieutenant, Martinez, and Beasley. (*Id.* at 5.) She also seeks an injunction permanently enjoining the BOP "from continuing to transport [her] in the manner she was transported on 12-14 to 12-16, 2020." (*Id.*)

In Pinson's amended complaint, she indicates her claims are brought against FNU LNU Lieutenant in his individual capacity and against Martinez and Beasley in their individual and official capacities (*Id.* at 2, 3.). She does not indicate whether Gutierrez and Hagge are sued in their individual or official capacities. (*Id*. at 15.)

Defendant BOP and the Official Capacity Defendants now seek dismissal of the claims against them. Defendants state that because courts construe complaints liberally when a pro se plaintiff fails to specify whether suing in an individual or official capacity, and because Plaintiff failed to specify in which capacity she is suing Gutierrez and Hagge, they would construe the amended complaint to be a suit against Gutierrez and Hagge in both their individual and official capacities. (Doc. 59 at 2.) The Court notes that Pinson states in a later filing with the Court that she is suing Gutierrez and Hagge in their individual capacities. (Doc. 39 at 1.) In this document, Pinson also states that she is suing Beasley, Martinez, and the unknown lieutenant in their individual capacities. (*See id.*) Pinson's allegations and statements in her briefs, however, are often inconsistent. Thus, the Court will construe Pinson's amended complaint to bring official capacity and individual capacity claims against Martinez and Beasley and to bring individual capacity

4

claims against the unknown lieutenant, Gutierrez, and Hagge.[3] Defendants now move to dismiss. (Doc. 59.)

## II. Legal Standard

### A. Establishing Jurisdiction

The existence of subject matter "jurisdiction [must] be established as a threshold matter . . . ." *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (citation omitted). Federal courts have limited jurisdiction and may consider only cases "authorized and defined in the Constitution . . . [and] entrusted to them under a jurisdictional grant by Congress." *Murphy v. United States*, CIV No. 20-557 GBW/SMV, 2020 WL 6939716, at *2 (D.N.M. Nov. 25, 2020), *modified*, 2020 WL 7342671 (D.N.M. Dec. 14, 2020) (quoting *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994)). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." *Id.* (quoting *Steel Co.*, 523 U.S. at 104).

### B. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek to dismiss a claim against it for lack of subject matter jurisdiction. If a party argues jurisdiction does not exist based solely on the allegations in the complaint, a court must presume the truth of those allegations and determine whether those facts and any reasonable inferences in the plaintiff's favor establish jurisdiction. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). When the question of

---

[3] Defendants did not move to dismiss the individual capacity claims. They state in a footnote that the United States Attorney's Office is waiting on a determination of who will represent the officers in their individual capacities. (Doc. 59 at 1 n.1.) In addition, Defendants state that they are not aware that any of the individual officers have been served. (*Id.*) The Court notes that the docket indicates one summons was returned as unexecuted (Doc. 53), but the docket also indicates that several individuals have been served. (Docs. 54–55.) In addition, a January 9, 2025 docket entry shows a summons for Hagge was returned with a Waiver of Service and that Hagge's answer is due on March 4, 2025. (Doc. 68.) The Proposed Findings and Recommended Disposition is only applicable to the BOP and the Official Capacity Defendants.

5

whether jurisdiction exists depends on a substantive issue, however, a court must convert a motion to dismiss under Rule 12(b)(1) into a motion to dismiss for failure to present a claim under Rule 12(b)(6). *See Bell v. United States*, 127 F.3d 1226, 1228 (10th Cir. 1997).

### C. Rule 12(b)(6)

"To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Murphy*, 2020 WL 6939716, at *4 (quoting *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011)) (quotation marks omitted). To state a plausible claim, a complaint does not need detailed factual allegations but requires more than a recitation of the elements of the claim or mere conclusory statements. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When determining whether a claim is plausible, a court must assume the facts in the complaint are true and draw all reasonable inferences in the plaintiff's favor, but it does not need to accept legal conclusions. *See Leverington*, 643 F.3d at 723; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Indeed, a complaint may survive a Rule 12(b)(6) motion to dismiss even if it is unlikely a plaintiff will be able to prove the facts she alleges. *See Murphy*, 2020 WL 6939716, at *4. In other words, all a complaint must do is include allegations that, assuming they are true, make the claim for relief more than merely speculative, even if it is ultimately unlikely they can be proven to be true. *See Twombly*, 550 U.S. at 556.

### D. Pro Se Litigant's Pleadings

A pro se litigant's pleadings are broadly construed and "held to a less stringent standard than formal pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)

(citations omitted). The Court, however, cannot assume the role of advocate for the pro se litigant. *Id.* "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.* (citations omitted). "The Court may not assume that a pro se litigant can prove facts that have not been alleged, or that a defendant has violated laws in ways that the pro se litigant has not alleged." *Amaya v. Bregman*, 149 F. Supp. 3d 1312, 1317 (D.N.M. 2015) (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)).

### III.  The Court recommends granting Defendants' motion.

Defendants first argue that Pinson's claims must be dismissed because she failed to exhaust the required administrative remedies under the Prison Litigation Reform Act (PLRA). (*See* Doc. 59 at 5–11.) Defendants next assert that Pinson's constitutional claims brought under *Bivens* must be dismissed because sovereign immunity shields the United States, its agencies, and officers acting in their official capacities. (*Id.* at 11–13.) Finally, Defendants contend that Pinson is not entitled to injunctive relief against the BOP because there has been no waiver of the BOP's sovereign immunity, and she fails to allege facts establishing that she is entitled to injunctive relief. (*Id.* at 11–13.) The Court will address each in turn.

#### A.  PLRA

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner must "exhaust all available administrative remedies 'prior to filing a lawsuit regarding prison conditions in federal court.'" *Estrada v. Smart*, 107 F.4th 1254, 1259 (10th Cir. 2024) (quoting *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010)). "Exhaustion under

the PLRA is 'mandatory' and 'unexhausted claims cannot be brought in court.'" *Id.* (quoting *Jones v. Bock*, 549 U.S. 199, 211 (2007)). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

Under the plain language of § 1997e(a), "exhaustion is a precondition for bringing suit . . . ." *Estrada*, 107 F.4th at 1262 (quoting *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013)). Administrative exhaustion requires proper completion of the grievance procedure. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "[S]ubstantial compliance is insufficient." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (citation omitted).

"Failure to exhaust [administrative remedies] under the PLRA is an affirmative defense." *Estrada*, 107 F.4th at 1261 (quoting *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)). Defendant bears the burden of proof in establishing the failure to exhaust. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). If it is clear from the face of the plaintiff's complaint, a district court can dismiss a complaint for failure to exhaust under the PLRA. *See Russell v. Lincoln*, 267 F. App'x 785, 787 (10th Cir. 2008).

Defendants argue that it is clear from the face of Pinson's amended complaint that she did not exhaust her administrative remedies prior to bringing suit. (*See* Doc. 59 at 7.) The Court, however, concludes that it is not clear because Pinson's amended complaint contains contradictory and inconsistent factual allegations. On the one hand, Pinson checked the box "no" about whether she filed a grievance in the prison, and she wrote that she "requested but was never supplied forms." (Doc. 21 at 7.) On the other hand, she also checked another box "yes" stating that she filed

8

a grievance about the events described in the complaint. (*Id.*) Contradictorily, she included a handwritten note stating, "sent request for forms but never got them." (*Id.*) In the final question asking about whether she filed a grievance, she stated that she filed one at "USP Coleman II."[4] (*Id.*) Thus, she alleges that she both filed a grievance and did not file one. She also contends that her grievance did not arise while confined in jail or prison but contradictorily alleges that the grievance procedure at the prison covers some or all of her claims. Thus, it is unclear from the face of Pinson's complaint whether she exhausted her administrative remedies.[5]

In addition, Pinson alleges that she requested forms to file a grievance, but she was not given them. "The plain language of the PLRA requires that prisoners exhaust only *available* remedies." *Tuckel*, 660 F.3d at 1252 (quoting 42 U.S.C. § 1997e(a)). "[A]n administrative remedy is not 'available' under the PLRA if 'prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of the administrative remedy.'" *Id.* (quoting *Little*, 607 F.3d at 1250). Because Pinson alleges that she was not given the forms, this raises the question of whether the grievance procedure was available to her. The Court recognizes that Defendants argue Pinson does not identify an individual from whom she requested the forms, when she requested the forms, or what further efforts she

---

[4] Pinson's allegations reference prisons and transport between USP Tucson (Arizona), USP Victorville (California), FCC Thomson (Illinois), and FCI La Tuna (Texas). (Doc. 21 at 12–14.) Nowhere in her allegations does she allege facts relating to USP Coleman II (Florida). Thus, it is unclear whether she was in USP Coleman II and filed a grievance there.

[5] Pinson appears to allege that her claim did not arise in prison because her allegations concern the treatment she received while being transported from one prison facility to another and in the New Mexico desert. (Doc. 21 at 6, 14.) The Tenth Circuit's recent ruling in *Estrada v. Smart*, however, appears to foreclose Pinson's argument. *See* 107 F.4th 1254 (10th Cir. 2024). In *Estrada*, the Tenth Circuit found that the PLRA's scope is broad and "is not dependent strictly and solely upon geography . . . ." *Id.* at 1265. In addition, it found that "[t]he phrase 'with respect to prison conditions' is [] 'unmistakably broad.'" *Id.* at 1266 (quoting *Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1205 (10th Cir. 2023)). The Tenth Circuit declined to carve out an exception to the PLRA for incidents happening outside the boundary of a prison noting that if it "adopted [the plaintiff's] interpretation of the PLRA, all transportation of all prisoners to or from prisons would be deemed outside the zone of the PLRA. Such gaps would be significant; prisoners routinely are transported from prison to other correctional facilities, medical appointments, or courthouses." *Id.* at 1267. Due to the Tenth Circuit's holding in *Estrada*, the Court concludes that Pinson's claims, even though arising during transport between prison facilities, are covered by the PLRA.

made to obtain the forms. (Doc. 59 at 9–10.) As noted by the Supreme Court, however, "failure to exhaust is an affirmative defense under the PLRA, and [] inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). At this juncture, construing the amended complaint in the light most favorable to Pinson, and recognizing that exhaustion under the PLRA is an affirmative defense for which Defendants bear the burden, the Court cannot conclude that she failed to administratively exhaust her remedies. Thus, the undersigned recommends denying Defendants' first basis for dismissal.

### B. Pinson's Claims for Violations of Constitutional Rights under *Bivens*

Defendants next argue that Pinson's claims for an alleged violation of the First and Eighth Amendment against the BOP and officers in their official capacities must be dismissed as a matter of law because sovereign immunity bars these claims. (Doc. 59 at 11–13.) A claim asserted against a federal official in their official capacity is akin to one asserted against the United States. *See Farmer v. Peril*, 275 F.3d 958, 963 (10th Cir. 2001). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted). In addition, "a *Bivens* claim can be brought only against federal officials in their individual capacities." *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009). "'*Bivens* claims cannot be asserted directly against the United States . . . or federal agencies' such as the BOP." *Jones v. United States*, No. 20-cv-0442 KWR/KRS, 2020 WL 3129026, at *2 (D.N.M. June 12, 2020) (quoting *Smith*, 561 F.3d at 1099)).

Plaintiff concedes that she does not assert *Bivens* claims against any of the officers in their official capacities. In addition, she fails to address whether she can bring a *Bivens* claim against the BOP. As noted above, however, she cannot. Accordingly, the undersigned recommends dismissal of Pinson's constitutional claims brought under *Bivens* against the individual Defendants in their official capacities and the BOP for lack of subject matter jurisdiction. *See Peterson v.*

10

*Timme*, 621 F. App'x 536, 541 (10th Cir. 2015) ("Ordinarily, federal courts lack jurisdiction to entertain such claims in accordance with principles of sovereign immunity.") (citations omitted).

### C. Pinson's Claim for Injunctive Relief

Defendants assert that sovereign immunity shields the BOP from Pinson's request for injunctive relief. (Doc. 59 at 13–16.) They assert that Pinson does not identify an express waiver of the United States' sovereign immunity in her amended complaint. (*Id.* at 14.) In addition, Defendants argue that even if Pinson identified a waiver, she does not assert facts demonstrating that she would be entitled to permanent injunctive relief. (*Id.* at 14–15.)

Pinson contends that sovereign immunity does not shield the BOP from injunctive relief. She argues that 28 U.S.C. § 1331, 5 U.S.C. § 702, and the Tenth Circuit's decision in *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005) demonstrate that the Court has subject matter jurisdiction. (Doc. 63 at 6–9.) In addition, Pinson asserts that the Court should not apply the Rule 65(a) permanent injunction standard to her complaint. (*Id.* at 9–10.)

"The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance." 5 U.S.C. § 702. In addition, "federal district courts . . . have jurisdiction over claims by federal prisoners against federal prison officials seeking vindication of their constitutional rights under either 28 U.S.C. § 1331 or 28 U.S.C. § 1361 and may obtain relief in the nature of either injunction or mandamus." *Simmat*, 413 F.3d at 1236. "A request for injunctive relief normally proceeds against a high-ranking official—such as the warden—in his or her *official* capacity." *Kourani v. Sproul*, No. 21-CV-01721-JPG, 2022 WL 1185126, at *5 (S.D. Ill. Apr. 21, 2022); *see also Pinson v. Berkebile*, 553 F. App'x 852, 854 n.4

11

(10th Cir. 2014) ("Prisoners may also seek injunctive relief against federal officials in their official capacity.") (citing *Simmat*, 413 F.3d at 1231–34, 1236).

These statutes and caselaw demonstrate that a request for injunctive relief may proceed as a claim against the official capacity defendant, but it does not provide a basis for an injunction against the BOP. Instead, the injunctive relief is against the federal official. Defendants contend that Pinson's amended complaint unequivocally seeks a permanent injunction only against the BOP without identifying any federal officer by name. (Doc. 59 at 14–17; Doc. 66 at 7–8.) In addition, Defendants assert that Plaintiff fails to identify any federal officers responsible for compliance in her request for a permanent injunction. (*Id.*) Because Plaintiff does not identify federal officers by name, Defendants argue that she is not entitled to injunctive relief because the BOP is protected by sovereign immunity. (*Id.*)

Here, the pertinent issue is whether Pinson brings a claim against the individual Defendants in their official capacity for this injunctive relief. The Court again starts with the premise that Pinson's allegations (and her briefing) are less than clear. On the one hand, she states that she brings suit against the individual Defendants in their individual capacities. And her amended complaint clearly states that she seeks a permanent injunction against the BOP—without identifying any individual Defendants. (Doc. 21 at 5.) Thus, to the extent that Pinson seeks injunctive relief against the BOP, sovereign immunity bars this claim.

Pinson also alleges, however, that she brings suit against Martinez (Warden) and Beasley (Regional Director) in their official capacities. (*Id.* at 3.) Because she states in her amended complaint that she brings an official capacity claim against these two Defendants, and reading her amended complaint broadly, it could be read to seek injunctive relief against these Defendants.

Yet Pinson's allegations lack substance. Pinson includes very few factual allegations relating to Martinez and Beasley. (*Id.* at 12 – 14.)

"A party requesting a permanent injunction bears the burden of showing: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Fisher v. Oka. Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003) (citations omitted). Further, an injunction order "must: (A) state the reasons why it issued; (B) state its terms *specifically*; and (C) describe *in reasonable detail*—and not by referring to the complaint or other document—the act or acts restrained or required." *McGhee v. Biamont*, No. 07-cv-0609 BB/LAM, 2008 WL 11426893, at *5 (D.N.M. July 29, 2018) (quoting Fed. R. Civ. P. 65(d)). When allegations in a complaint are vague and conclusory, a plaintiff fails to establish "a basis for equitable relief" for a permanent injunction and thus cannot "state a claim on which relief can be granted." *See id.*

Here, Pinson requests that the Court "issue an injunction permanently enjoining BOP from continuing to transport plaintiff in the manner she was transported on 12-14 to 12-16, 2020." (Doc. 21 at 5.) Pinson does not allege with specific or reasonable detail the conduct she seeks to enjoin. Instead, her allegations are vague as to the manner she was transported, and she includes no allegations nor a request as to how she should be transported.[6] As to these two Defendants, she simply alleges that Beasley directed a transfer, in which she was driven in a van by herself to the

---

[6] Defendants direct the Court to Pinson's original complaint in which she stated that she sought an injunction "enjoining defendant BOP from continuing to use 'black box' or hard restraints when transporting the Plaintiff." (Doc. 1 at 5.) However, to the extent Pinson continues to request this injunctive relief, she could not demonstrate that she would be successful on the merits because "a policy requiring all prisoners to wear a black box when outside of the prison does not violate the Eighth Amendment because, although the black box causes discomfort, its use is penologically justified 'by the greater risk of escape . . . and the reduced number of guards." *Moody v. Proctor*, 986 F.2d 239, 241 (8th Cir. 1993) (quoting *Fulford v. King*, 692 F.2d 11, 14 (5th Cir. 1982)). Thus, her claim for a permanent injunction would fail on this basis as well.

13

Victorville prison, on December 14, 2020. (Doc. 21 at 12.) As to Martinez, she simply alleges that Martinez stated, prior to her departure from the Victorville prison, that prison officials had a special trip planned for her. (*Id.*) Finally, she states that Beasley and Martinez knew of her previous lawsuit and a COVID-19 declaration in California when her transportation was approved. (*Id.* at 13–14.) Thus, her sparse factual allegations fail to adequately allege sufficient facts to state a claim for the equitable remedy of an injunction against Martinez and Beasley—the two named Defendants with official capacity claims asserted against them. Thus, Pinson's injunctive relief request is conclusory, and Pinson cannot state a claim for injunctive relief. Accordingly, the undersigned recommends that the Court dismiss Pinson's injunctive claim due to the BOP's sovereign immunity and for failure to state a claim against the Official Capacity Defendants.

### D. Leave to Amend

Pinson contends that if Defendants' motion is meritorious, she should be allowed to amend her complaint. (Doc. 63 at 10–11.) The Court disagrees. Pinson did not file a formal motion for leave to amend. *See* D.N.M. LR-Civ. 15.1 (requiring that a proposed amendment to a pleading accompany a motion seeking leave to amend); Fed. R. Civ. P. 15(a)(2) (stating that after amending a pleading once as a matter of law, a party can only amend "with the opposing party's written consent or the court's leave."). Nor did Pinson include or assert any additional allegations in her response that would warrant amendment. (*See* Doc. 63 at 10–11.) In addition, Pinson does not have the right to amend her complaint as a matter of course because she already amended her complaint once. *See* Fed. R. Civ. P. 15(a); (Doc. 21). This case has been pending for almost four years. As noted above, Pinson is a frequent litigant and should be familiar with court rules. Thus, the undersigned

recommends the Court deny Pinson's request to amend her complaint.

## IV.    Conclusion and Recommendation

The undersigned finds that Pinson's claims against the BOP and Official Capacity Defendants are either barred by sovereign immunity or Pinson fails to state a claim. Thus, the Court recommends granting Defendant BOP's and Official Capacity Defendants' Amended Motion to Dismiss and dismissing the claims against the BOP and the Official Capacity Defendants. The individual capacity claims remain.

**IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 58) be **DENIED AS MOOT** and that Defendant's Amended Motion to Dismiss (Doc. 59) be **GRANTED**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE