IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEREMY PINSON,[1]

    Plaintiff,

v.                                                                                                      No. 1:21-cv-0185 KWR/DLM

FEDERAL BUREAU OF PRISONS, *et al.*,

    Defendants.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION RECOMMENDING DISMISSAL OF PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL CAPACITY DEFENDANTS

Pro se Plaintiff Jeremy Pinson brings claims under the First and Eighth Amendments against five individual BOP employees pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. 21.) Before the Court is Defendant Matthew Hagge's Motion to Dismiss Plaintiff's *Bivens* Claims against Individual Capacity Defendants, filed on March 4, 2025. (Doc. 75.) Pursuant to Federal Rule of Civil Procedure 12(b)(6), he moves to dismiss Pinson's claims. United States District Judge Kea W. Riggs referred the case to the undersigned to make proposed findings and a recommended disposition. (Doc. 19.) After careful review and consideration of the filings, the Court finds that Pinson fails to state a claim against Defendant Hagge. Thus, the Court recommends granting Defendant Hagge's motion.

In addition, there are four other Individual Capacity Defendants. Two have not been served, and two have been served but have not entered an appearance. However, even if these Defendants all entered an appearance and defended this case, Pinson's *Bivens* claims against them are premised on the same conduct at issue with Hagge. Because Pinson's *Bivens* claims are not cognizable

---

[1] Jeremy Pinson, also known as Grace, refers to herself using she/her pronouns. (Doc. 21 at 2, 12.) The Court will do the same.

1

against Hagge, Pinson's claims against the four other Individual Capacity Defendants also fail.

The only claims remaining in this case are the *Bivens* claims asserted against the five Individual Capacity Defendants. Because Pinson cannot assert a claim against any of these Defendants, the Court recommends dismissing the amended complaint for failure to state a claim.

I.     **Factual and Procedural Background**

Pinson is a federal prisoner in the custody of the BOP.[2] In Pinson's original complaint filed on March 1, 2021, she asserted claims against the BOP and an unknown lieutenant (FNC LNU Lieutenant) for an alleged violation of her Eighth Amendment rights pursuant to *Bivens*. (Doc. 1.) In Pinson's amended complaint, she added a claim under the First Amendment. (Doc. 21 at 3.) Pinson also added four defendants: (1) Felipe Martinez, Jr., Warden of Federal Bureau of Prisons; (2) Gene Beasley, Regional Director, Federal Bureau of Prisons; (3) M. Gutierrez, Federal Bureau of Prisons; and (4) M. Hagge, Lieutenant, Federal Bureau of Prisons, USP Victorville. (*Id.* at 3, 5, 12–15.)

Pinson alleges that while serving a prison sentence, she filed a lawsuit and sought a preliminary injunction "regarding conditions of confinement that failed to protect her from Covid-19." (*Id.* at 12.) After the judge set a hearing in that case, she contends that "a series of events began that served as a nightmarish experience" for her. (*Id.*) Pinson asserts that her claims arise between December 14 and December 16, 2020. (*Id.* at 5.) She alleges that while at USP Victorville, and prior to her departure from the facility on December 14, Martinez, Hagge, and Gutierrez

---

[2] Pinson is a frequent litigant, and she admits that she is ineligible under 28 U.S.C. § 1915 to proceed in forma pauperis. (Doc. 21 at 8.) *See also Manos v. U.S. Dep't of Justice*, No. 1:18-cv-00314-UNA, 2018 WL 11670880, at *1 (D.D.C. June 12, 2018) (stating that "Pinson long ago accumulated three strikes") (citation omitted); *Pinson v. Oliver*, 601 F. App'x 679, 683 (10th Cir. Feb. 12, 2015) (imposing filing restrictions on Pinson due to an abusive filing history with regard to § 2241 motions and stating that "Pinson has a lengthy and abusive filing history . . . [and] has filed more than a hundred civil complaints and § 2241 applications in various federal courts throughout the country.").

repeatedly stated that they had "a special trip planned for [her], good old fashion[ed] diesel therapy." (*Id.*)

On December 14, 2020, Pinson contends that Gutierrez directed an "inmate intra-system transfer." (*Id.*) The transfer took two days. (*Id.* at 13–14.) Pinson states that she was placed on a bus in restraints that were too tight, and the restraints painfully compressed her injured left wrist and caused severe pain. (*Id.* at 12–13.) She alleges that she complained to an unknown, white male lieutenant and other officers that the restraints were too tight. (*Id.* at 13.) At a stop in New Mexico, Pinson again complained about the restraints. (*Id.*) She also complained of the lack of water, food, and medications, as well as the lack of opportunity to urinate and defecate. (*Id.*) Pinson asked for soft restraints and to be taken to the hospital because her hands were numb, and her fingers were stiff. (*Id.*) The lieutenant denied her request. (*Id.*)

At Pinson's bus transfer in Texas, she complained to a new lieutenant who allegedly stated that "you put them lawsuits in and pissed-em off way higher than my pay grade, deal with it." (*Id.*) During the bus trip, Pinson contends that she was denied a face mask, social distancing, and other personal protective equipment. (*Id.*) She claims that Beasley, Martinez, Hagge, and Gutierrez were aware of her previous lawsuit and the COVID-19 pandemic state of emergency in California when they approved her transport. (*Id.* at 13–14.) As a result of the transfer, Pinson asserts that she endured severe pain, humiliation, discomfort, increased nerve damage, distress, despair, and suicidal ideation. (*Id.* at 14.)

In Pinson's amended complaint, she indicates her claims are brought against FNU LNU Lieutenant in his individual capacity and against Martinez and Beasley in their individual and official capacities (*Id.* at 2, 3.). She does not indicate whether Gutierrez and Hagge are sued in their individual or official capacities. (*Id*. at 15.) In a later filing with the Court, however, Pinson

3

states that she is suing Gutierrez and Hagge in their individual capacities. (Doc. 39 at 1.) The Court previously construed Pinson's amended complaint to bring official capacity and individual capacity claims against Martinez and Beasley and to bring individual capacity claims against the unknown lieutenant, Gutierrez, and Hagge. (Docs. 70, 72.) Pinson seeks damages and an injunction against the BOP.

Defendant BOP and the Official Capacity Defendants previously sought dismissal of the claims against them. (Doc. 59.) The Court dismissed Pinson's injunctive claim due to the BOP's sovereign immunity and dismissed claims against the Official Capacity Defendants for failure to state a claim. (Doc. 72.) At that time, Defendants did not move to dismiss the Individual Capacity claims. They stated in a footnote that the United States Attorney's Office was waiting on a determination of who would represent the officers in their individual capacities, and they were not aware that any of the individual officers had been served. (Doc. 59 at 1 n.1.)[3]

Individual Defendant Hagge now moves to dismiss the individual-capacity claims asserted against him contending that there is no remedy for these claims under *Bivens*. (Doc. 75.)[4] Pinson's deadline to respond expired on March 18, 2025, and she did not file a response. On April 18, 2025, however, she requested an extension of time to file a response, stating that she had not received Defendant's motion because she had moved prisons. The Court granted her additional time to respond and set the response deadline for May 21, 2025. Pinson did not file a response. Thus, Defendant's motion is unopposed.

---

[3] In the Court's previous Order, it noted that the docket indicated one summons was returned as unexecuted (Doc. 53), but the docket also indicated that several individuals may have been served. (Doc. 70 at 5 n. 3 (citing Docs. 54–55).)

[4] Defendant contends that none of the other individual Defendants have been served. This issue will be discussed below.

## II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (cleaned up) (quotation omitted). To state a plausible claim, a complaint does not need detailed factual allegations but requires more than a recitation of the elements of the claim or mere conclusory statements. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When determining whether a claim is plausible, a court must assume the facts in the complaint are true and draw all reasonable inferences in the plaintiff's favor, but it does not need to accept legal conclusions. *See Leverington*, 643 F.3d at 723; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Indeed, a complaint may survive a Rule 12(b)(6) motion to dismiss even if it is unlikely a plaintiff will be able to prove the facts she alleges. *See Murphy v. United States*, Civ. No. 20-557 GBW/SMV, 2020 WL 6939716, at *4 (D.N.M. Nov. 25, 2020). In other words, all a complaint must do is include allegations that, assuming they are true, make the claim for relief more than merely speculative, even if it is ultimately unlikely they can be proven to be true. *See Twombly*, 550 U.S. at 556.

A pro se litigant's pleadings are broadly construed and "held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). The Court, however, cannot assume the role of advocate for the pro se litigant. *Id.* "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.* (citations omitted).

5

**III.    The Court recommends granting Defendant's motion**

Pinson brings her individual-capacity claims under the First and Eighth Amendments against five BOP employees pursuant to *Bivens*. Defendant Hagge asserts that both claims must be dismissed. He argues that both claims present a new *Bivens* context, and special factors counsel against judicial extension of *Bivens* to the new context of Pinson's First and Eighth Amendment claims.

**A.  *Bivens* claim**

Under 42 U.S.C. § 1983, an individual may sue for monetary damages "if a state official violates his or her constitutional rights." *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017) (citing 42 U.S.C. § 1983). "Congress did not create an analogous statute for federal officials." *Id.* The United States Supreme Court, however, decided in *Bivens* that "even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition [under the Fourth Amendment] against unreasonable search and seizures." *Id.* at 130–31 (citing *Bivens*, 403 U.S. at 397). In two other instances, the United States Supreme Court recognized "an implied cause of action . . . involving other constitutional violations." *Id.* at 131 (citing *Davis v. Passman*, 442 U.S. 228 (1979) (finding a Fifth Amendment due process violation for gender discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (finding an Eighth Amendment violation for failure to provide adequate medical treatment)). Those three cases, dating back 45 years, "represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 582 U.S. at 131.

"After those decisions, however, the Court changed course." *Hernandez v. Mesa*, 589 U.S. 93, 99 (2020). The Court is now "reluctant to create new causes of action." *Id.* at 101. And the "expansion of *Bivens* is 'a disfavored judicial activity.'" *Id.* (quoting *Ziglar*, 582 U.S. at 121).

6

Thus, "for almost 40 years, [the United States Supreme Court] ha[s] consistently rebuffed requests to add to the claims allowed under *Bivens*." *Id.* at 101–02 (collecting cases). As recently noted by the Tenth Circuit, "*Bivens* is now all but dead." *Rowland v. Matevousian*, 121 F.4th 1237, 1241–42 (10th Cir. 2024) (citation omitted); *see also Tate v. Harmon*, 54 F.4th 839, 844 (4th Cir. 2022) (noting the Supreme Court's recent "hostility to any expansion" of *Bivens* actions) (citations omitted).

To determine whether a plaintiff asserts a cognizable *Bivens* claim, a court must engage in a two-step inquiry. *Rowland*, 121 F.4th at 1242. First, the court must consider whether the case "arises in a new *Bivens* context, or in other words, analyze whether his case is 'meaningfully different from the three cases in which the Court has implied a damages action.'" *Id.* (quoting *Egbert v. Boule*, 596 U.S. 482, 492 (2022)). Second, the court "must consider whether there are special factors suggesting that 'the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Egbert*, 596 U.S. at 492). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy.'" *Id.* (quoting *Egbert*, 596 U.S. at 492).[5]

### B. Pinson's First Amendment Claim

Pinson asserts a First Amendment claim and alleges that the individual Defendants retaliated against her for filing a lawsuit seeking a preliminary injunction regarding her conditions of confinement related to COVID-19. (Doc. 21 at 3, 12.)

---

[5] The Tenth Circuit has also noted that the two-step inquiry may be reduced to the single question of "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Silva v. United States*, 45 F.4th 1134, 1139 (10th Cir. 2022) (quoting *Egbert*, 596 U.S. at 493).

1. **New Context**

Pinson's First Amendment claim is foreclosed by the Supreme Court's decision in *Egbert*. In that case, the United States Supreme Court directly addressed the issue and explicitly stated that "there is no *Bivens* cause of action for First Amendment retaliation." *Egbert*, 596 U.S. at 499. Accordingly, Pinson's First Amendment claim arises in a new context and is not cognizable.

2. **Special Factors Counsel against the Extension of *Bivens***

In the next step of the analysis, special factors also counsel against extending *Bivens* in this context. "Recognizing any new *Bivens* action 'entails substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). As noted by the United States Supreme Court in *Egbert*, "[e]xtending *Bivens* to alleged First Amendment violations would pose an acute risk of increasing such costs." *Id.* "A plaintiff can turn practically any adverse action into grounds for a retaliation claim." *Id.* "And, 'because an official's state of mind is easy to allege and hard to disprove, insubstantial claims that turn on [retaliatory] intent may be less amenable to summary disposition.'" *Id.* (quoting *Crawford-El v. Britton*, 523 U.S. 574, 584–85 (1998)). Because of the increased social and financial costs, the potential for "broad-ranging discovery" for which there would be "no clear end to the relevant evidence[,]" and the likelihood that retaliation claims are "more likely to impose 'a significant expansion of Government liability,'" these factors counsel against *Bivens* relief. *Id.* at 499–500 (quotations omitted). The Supreme Court also noted "that, in light of these costs, 'Congress is in a better position to decide whether or not the public interest would be served' by imposing a damages action." *Id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 390 (1983)). Because the United States Supreme Court has already determined that these special factors counsel against extension of *Bivens* to a

First Amendment claim, they are equally applicable in this case and counsel against extension. Thus, Plaintiff fails to state a claim for First Amendment retaliation under *Bivens*.

### C. Pinson's Eighth Amendment Claim

Pinson also asserts an Eighth Amendment claim against the individual Defendants. (Doc. 21 at 3, 12–14.)

#### 1. New Context

Pinson's Eighth Amendment claim arises in a new context. "[A] case can present a new context for *Bivens* purposes if it implicates a different constitutional right; if judicial precedents provide a less meaningful guide for official conduct; or if there are potential special factors that were not considered in previous *Bivens* cases." *Ziglar,* 582 U.S. at 148. "A claim may arise in a new context *even if* it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Rowland*, 121 F.4th at 1243 (quoting *Hernandez*, 589 U.S. at 102). "[G]iven the 'expressed caution about extending the *Bivens* remedy,' even 'significant parallels to one of the Court's previous *Bivens* cases' may not be enough to show that a case arises in the same context." *Id.* (quoting *Ziglar*, 582 U.S. at 147). "[E]ven a modest extension is still an extension." *Ziglar*, 582 U.S. at 147.

The United States Supreme Court previously allowed a *Bivens* claim based on the Eighth Amendment for failure to provide medical care in *Carlson v. Green*, 446 U.S. 14 (1980). Although Pinson's claim is premised on the Eighth Amendment, it is not similar and "contains more than 'small' differences from *Carlson* . . . ." *See Rowland*, 121 F.4th at 1243. In *Carlson*, there were allegations that prison officials acted against the doctor's orders, that the prisoner did not receive competent medical attention, that the prisoner was administered drugs that made his medical condition worse, that prison officials used an inoperative medical device which worsened the

9

prisoner's condition, and that the prisoner died as a result. *Id.* (setting forth the *Carlson* allegations).

In this case, there are no such allegations. Instead, as noted above, Pinson alleges that she was transported in a prison bus with restraints that were too tight on her wrists, that she was not provided with immediate medical attention for her wrist pain (or provided with soft restraints), and that she was temporarily denied access to food, water, and the bathroom. These allegations are substantially and significantly different than the allegations in *Carlson* and thus present a new context for a *Bivens* claim under the Eighth Amendment.

### 2.  Special Factors Counsel against the Extension of *Bivens*

Furthermore, special factors warrant against an extension. A court must consider "whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 496 (quoting *Ziglar*, 582 U.S. at 136). In particular, a court must consider whether "'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.'" *Id.* (citation omitted). "Recognizing any new *Bivens* action 'entails substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *Id.* at 499 (quoting *Anderson*, 483 U.S. at 638).

In this case, as Defendant contends, Pinson's claim implicates the field of prison administration. Specifically, her allegations relate to prisoner transportation, which involves staff, inmate, and public safety. "Prison administration is . . . a task that has been committed to the responsibility" of the legislative and executive branches of the government, and "separation of powers concerns counsel a policy of judicial restraint." *Turner v. Safley*, 482 U.S. 78, 85 (1987). "Congress is 'far more competent than the Judiciary' to weigh such policy considerations." *Egbert*,

596 U.S. at 491 (citation omitted). Judicial intrusion into this field would be particularly harmful and intrusive, and it would likely unduly inhibit officials from performing their duties of transporting prisoners. Thus, this factor counsels against the extension of a *Bivens* remedy here.

Furthermore, Defendant asserts that there are multiple alternative remedies available to Pinson to safeguard against constitutional violations. An independent means for disposing of a *Bivens* claim is whether there are "alternative remedial schemes available . . . ." *Silva*, 45 F.4th at 1141. "[A]n alternative remedial scheme is sufficient 'so long as *Congress or the Executive* has created a remedial process that it finds sufficient to secure an adequate level of deterrence.'" *Id.* (quoting *Egbert*, 596 U.S. at 498). Even if a court concludes "that the Government's procedures are 'not as effective as an individual damages remedy,'" the court "cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 596 U.S. at 498 (quoting *Bush*, 462 U.S. at 372).

One of the alternative remedies available to Pinson that Defendant references is the BOP's Administrative Remedy Program.[6] The Tenth Circuit has explicitly stated that it has "little difficulty concluding that the BOP Administrative Remedy Program is an adequate 'means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring.'" *Silva*, 45 F.4th at 1141 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 62, 74 (2001)); *see also Egbert*, 596 U.S. at 497 (stating that *Bivens* relief was unavailable because the alternative remedy of the BOP's "Administrative Remedy Program" was available) (citing *Malesko*, 534 U.S. at 74). Accordingly, the availability of this alternative remedy is a special factor that counsels against extending a *Bivens* remedy here.

---

[6] Defendant discusses several alternative remedial schemes, but the Court will only address this one as it is sufficient.

11

In sum, Pinson's Eighth Amendment claim under *Bivens* arises in a new context, and special factors counsel against the extension of a *Bivens* remedy. Pinson therefore fails to state a claim.

### IV.     Other Individual Capacity Defendants and Dismissal of the Amended Complaint

There are four other Individual Capacity Defendants in this case that Pinson brought First and Eighth Amendment *Bivens* claims against. Service issues have plagued this case from the beginning. (*See* Doc. 43.) Currently, the docket shows that Defendant Beasely was not served. (*See* Doc. 53 (summons returned unexecuted as to Beasely).) There is nothing on the docket relating to service on the unknown lieutenant, and thus it appears he was not served either. The docket does, however, indicate that summons for Gutierrez and Martinez, Jr. were returned as executed (Docs. 54–55). These two Individual Capacity Defendants have not entered appearances.[7]

Regardless of whether these four Individual Capacity Defendants have been served, and even if these Defendants would enter an appearance, Pinson's First and Eighth Amendment *Bivens* claims are premised on the same or similar conduct as Hagge's conduct. (Doc. 21 at 12–14.) As explained in detail above, Pinson's *Bivens* claims do not arise in a new context, and special factors counsel against recognizing these claims. Accordingly, Pinson cannot state a *Bivens* claim against the other Individual Capacity Defendants either.

The only claims remaining in this case are the *Bivens* claims asserted against the five Individual Capacity Defendants. Because Pinson cannot assert a claim against any of these Defendants, the Court recommends dismissing the amended complaint for failure to state a claim.

---

[7] An appearance was entered for these Defendants for the claims asserted against them in their official capacity. The government states in the BOP/Official-Capacity Defendants' Motion to Dismiss (Doc. 59) and in the Individual Capacity Defendant Hagge's Motion to Dismiss (Doc. 75) that none of the other Individual Capacity Defendants have been served. Yet, as noted above, the docket indicates that there are executed summons for both Gutierrez and Martinez, Jr. Thus, the docket seems to contradict the government's position.

## V. Conclusion and Recommendation

The undersigned finds that Pinson fails to state a claim under *Bivens* against Individual Capacity Defendant Hagge. Thus, the Court recommends granting Defendant Hagge's Motion to Dismiss. In addition, Pinson's *Bivens* claims against the four other Individual Capacity Defendants are premised on the same conduct as Hagge's conduct. Because Pinson's *Bivens* claims are not cognizable against Hagge, Pinson's claims against the four other Individual Capacity Defendants also fail. Thus, the Court recommends dismissing the amended complaint for failure to state a claim.

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss (Doc. 75) be **GRANTED**.

**IT IS FURTHER ORDERED** that Pinson's claims against the four other Individual Capacity Defendants are not cognizable, and thus it is recommended that the amended complaint be dismissed.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE